# Union Canal Company *against* Loyd *et al.*

After the lapse of many years, the minute books of a corporation proved to have been found in their proper place, produced by the proper officer, and sworn to be the books or records of the company, are evidence in favour of the company in an ejectment by them against persons claiming under one who was proved at the date of the entry in the minutes to have been their president.

Corporation books are not generally evidence against a stranger, but are so against a corporator present and assenting to the entry made in them and against those claiming under him.

Cheques purporting to have been drawn by the President of a Canal Company on their treasurer, in favour of contractors, are evidence to show that such person acted as their president, and are also *primâ facie* evidence they were paid, if the work was done under the contract, and they are produced from the archives of the company or by their treasurer.

Surveys made under a resolution of the company, passed whilst R. M. was their president, and assented thereto, are evidence in a suit against persons claiming under R. M.; but a survey made under other circumstances is not evidence without other proof.

IV. — 50

[Union Canal Company v. Loyd.]

R. M., by articles of agreement, conveyed to a Canal Company an equitable title to a small part of a large tract of land which he held under an equitable title, on which he had paid a part of the purchase money, and was in possession. The whole tract was afterwards purchased at sheriff's sale as the property of R. M. by S. C., who subsequently procured a release of the legal title. R. M. afterwards became bankrupt. *Held,* in ejectment by the company against persons claiming from S. C., that the answer of R. M. on oath, on his examination before the commissioners of bankruptcy, stating that the land remained with the company to answer calls for his shares in the company, with a reference to his leger entry, was, after the death of R. M., admissible in evidence as an entry by a third person against his interest.

Merely being a stockholder in a Canal Company is not constructive notice of the claims of the company to lands.

A stockholder in a company is a witness in an ejectment by the company to prove service of a notice on defendant's agent, and the admission of such person that he was agent, and that notice was served on him.

Letters and acts of third persons, and minutes of a Canal Company claiming land by equitable title, and occupation as a canal for many years, are evidence to show recognition of their right and the exercise of ownership by them.

THIS was an ejectment for $\frac{71}{132}$ parts of an acre of land in Spring Garden, tried before the Chief Justice at *Nisi Prius*, in which a verdict was rendered for the defendants, and the plaintiffs obtained a rule to show cause why there should not be a new trial.

The plaintiffs claimed title under Robert Morris, who, by articles of agreement, had purchased from John Penn 142 acres and 9 poles of land, comprehending the *locus in quo*, and had paid part of the purchase money, viz., £1225, and received possession. The plaintiffs alleged a contract between them and Robert Morris for this strip for the use of the canal entered into in 1796.

The defendants held under a sheriff's deed, dated in 1798, conveying the whole tract, as the property of Robert Morris, to Samuel Coates, who, in December 1798, purchased from John Penn his title also.

The plaintiffs alleged and produced evidence to prove that Robert Morris was President of the Delaware and Schuylkill Navigation Company, to whose rights the plaintiffs succeeded, for a considerable period of time, and particularly in the year 1796. That before 1796, and down to the time of the suit brought, these Companies were in possession of certain portions of Robert Morris's land, and among others the premises described in the writ, and had excavated the same for the bed of a canal. That Mr Morris was at the time living on the land through which the bed of the canal was dug, and was the originator and the most active party in the canal project. That his son, who lived with him near the canal, had never heard him object to it as a trespass on his property.

On the trial the plaintiffs offered in evidence, and the judge overruled, minutes of the Delaware and Schuylkill Company containing the following resolutions, stated to be passed at a meeting of the Board at which Robert Morris presided.

[Union Canal Company v. Loyd.]

" March 15th 1796. Resolved, that the quantity of land occupied by the canal be ascertained by the engineer in order that a deed be prepared for the same. Mr Morris proposed to the board to accept in full satisfaction for his land the mean price between what was allowed by the board for Mr Hamilton's land on this side, and Mrs Harrison's on the other. Whereupon, resolved, that the said proposition be agreed to, and that at the rate of £57 10s. per acre be allowed to Mr Morris for so much of his land as is or shall be taken for the use of the canal.

On the 3d of May 1796, at a stated meeting of the Board of Managers, it was resolved, that the contracts for the land of Messrs Morris and Young be deemed and taken to have been entered into and concluded at the time their respective contracts for working on the same were made.

On the 30th of June 1796, it was resolved that the treasurer be directed to give credit to Mr Morris and Mr Young for the amount of their respective damages settled for their lands occupied by the track of the canal."

The evidence as to the minutes of the corporation was as follows: Thomas P. Roberts, the present treasurer, testified that he had been treasurer of the Union Canal Company since the year 1821, and the acting secretary, and had the custody of the books. That these were the minutes of the company, and had been as such in his possession. There might have been, but he never saw any others to his recollection. He found the books in the office. He could not recollect who preceded him as secretary or treasurer. He could not say he received those books from any one in particular. He found them in the office. Mr Duponceau swore that he was a stockholder in the old Union Canal Company, and remained so until it broke. He knew R. Morris's handwriting. The cheques were his handwriting. Morris was president when he became a stockholder. The witness was a director. He thought Morris was president a long time: he thought he was president in 1796: he had a strong impression he was president in 1796. R. P. Smith, another witness, swore that the minutes of the dates offered were in his father's handwriting. The book generally was in his father's handwriting.

The plaintiffs further gave in evidence a contract made on the 25th of April 1793, between the Delaware and Schuylkill Company and Gersham Johnson and Napier, engineers, to dig the canal, and then offered in evidence certain cheques drawn by Robert Morris as president, in favour of those persons, dated from the 30th of April 1793, to the 8th of February 1797, and purporting to be receipted by them; but these were rejected by the court, and an exception noted.

They further offered in evidence four surveys of the route of the canal through Mr Morris's land in March 1793, by Weston, engineer of the company; in April 1796, by Brookes, surveyor;

March 1804, by Hill, surveyor, all proved by the secretary and treasurer to have been found by him among the archives of the company, together with proof that Weston, Brooke and Hill were dead. These were rejected by the court, and an exception noted.

They further offered in evidence the following statement, under oath of Mr Morris, taken from the duly proved records of the bankrupt commissioners, viz.:

" The Canal Company of Delaware and Schuylkill owe me for the strip of land in which the canal is cut through Springetsbury and the Hills, which remains to answer the calls of the company for the instalments on my shares. September 19th, 1801. Leger of Robert Morris, page 109." This evidence was rejected, and an exception noted.

The plaintiffs proved contracts with the city of Philadelphia in 1813 and 1819, authorizing them to lay pipes along the towing paths of the canal for the passage of water from Fairmount, and that in pursuance of covenants with the city they had kept in repair the sides of the canal and culverts from 1813 to 1818 inclusive; and that in 1812 or 1813, the company had the canal bed marked by stones, inscribed U. C., and caused the same to be re-surveyed by Robert Brooke, the regulator of the Northern Liberties. They then offered in evidence various proceedings and acts to show their care and supervision of the canal and the exercise of ownership over it, and the recognition of their title and possession by others, consisting of proceedings of a meeting of citizens in January 1825, and resolutions of the company in June 1804, and afterwards at various times to 1825, respecting the sale of gravel and stones, the pay of surveyors, the general care and superintendence, payment of damages, repairs of culverts, guarding against encroachments, permission to erect fence, &c., sales of part to others. These the defendants objected to, and the court overruled and noted an exception.

The plaintiffs, to show notice of their rights, offered to show that the Bank of North America, under whom the defendants claimed, was, while it held the property, a stockholder in the Delaware and Schuylkill Canal Company, by proving a power of attorney from the bank to transfer 4 shares in the Canal Company, dated 7th of January 1809. This was also overruled, and exception noted.

The plaintiffs also offered the stock leger of the Delaware and Schuylkill Canal, with the account of Robert Morris, to show his indebtedness to the company, with entries in 1793, 1794 and 1795. The book was admitted, but the account was rejected, and an exception noted.

The plaintiffs called William Read, a stockholder, to prove service of a notice to the defendants not to build on the premises. He swore that he served a notice on Loyd and on his workmen on the 14th of October 1835. He gave notice to Mr Anderson, the

[Union Canal Company v. Loyd.]

workman, on the ground where the houses had since gone up. He gave the notice to Anderson, and desired it to be given to Loyd. He had no conversation with Loyd. He found Anderson engaged in superintending the buildings. He told the witness he was the superintendent. He kept no copy of the notice, but had a memorandum of it. This evidence was objected to and overruled, and an exception noted.

The plaintiffs having closed, the defendants gave evidence to prove that fences, ditches and banks had been put across the bed of the canal, but not on the premises in dispute; and that gravel had been dug even on the premises in dispute. The plaintiffs then gave evidence contradicting this. Before counsel addressed the jury, the Chief Justice informed them he should charge against the plaintiff's title as insufficient to sustain his action, in the absence of evidence of a contract and of payment of purchase money; notwithstanding any finding of the jury as to the length of the plaintiffs' possession and the character and perfectness of it. Upon this, counsel forbore to address the jury; and the Chief Justice charged them according to his views as above expressed, and they found for the defendants.

*C. Ingersoll* and *Meredith*, for plaintiffs.
*T. I. Wharton* and *Williams*, for defendants.

The opinion of the Court was delivered by

SERGEANT, J.—The points brought before us on this motion for a new trial do not involve any question on the merits of the case as it may hereafter appear. Their consideration will more naturally arise after the evidence shall be given and the facts placed before the jury for determination upon the evidence. I shall pass over, therefore, on the present occasion, all that has been said in relation to the titles of these parties under the contracts and deeds relied upon, and consider chiefly the reasons assigned for awarding a new trial.

The first of these reasons is, that the judge overruled the evidence offered by the plaintiffs of the minutes of the Union Canal Company of the 15th of March, 3d of May and 30th of June 1796, going to show that the company ordered the quantity of land occupied by the canal to be ascertained by the engineer; that a contract was made by Mr Morris with the company for so much of his land as was taken for the use of the canal; that the price was fixed at £57 10s. per acre, and that a credit was given to Mr Morris for the damages he sustained. It is objected that these minutes were not evidence, for two reasons; first, because they were not sufficiently authenticated as the books of the corporation; and secondly, because, if they were so authenticated, they are not evidence in favour of the corporation to affect a third person.

[Union Canal Company v. Loyd.]

More latitude must certainly be allowed in the proofs of corporation books and entries, where they are ancient, than where they are recent.   In the latter case, living witnesses may in most cases be produced to show they have been regularly kept by the proper officers of the corporation.   But to require this after the lapse of half a century, would be to exact an impossibility, which the law never forces any one to.   That books purporting to be the books of a corporation, or indeed official papers of any kind, are such, cannot be better proved after a lapse of many years than by being found in their proper place, produced by the proper officer, and sworn to be the books or records of the company or office.   Here that is done.   The secretary and treasurer of the company, who has been such for 21 years, produces the books from among the archives of the office, and swears they are the minutes of the Union Canal Company, and as such have been in his possession; that he found them in the office; and, in addition, there is the oath of a director of the company going to show that Mr Morris was in that year the president of the company.   There is evidence sufficient, we think, at least *primâ facie,* to go to the jury to show the authenticity of these minutes.

Corporation books are not generally evidence against a stranger. 1 *Phill. Ev.* 320.   But if a corporator is present assenting, he is bound by a corporate Act which may affect his individual rights. *Slee* v. *Bloom,* (5 *John. Ch.* 382).   Against Mr Morris, therefore, whom they show to have been a party to the contract, they are evidence, and against those claiming under him.

2.   The next reason assigned for a new trial is the rejection of five checks produced by the plaintiffs, drawn by Robert Morris as president, on the treasurer of the Delaware and Schuylkill Company, to whose rights the plaintiffs succeeded, dated from 30th of April 1793, to 8th of February 1797, in favour of Johnson & Napier, and receipted by them, the plaintiffs having previously given in evidence the contract between the company and Johnson & Napier, to dig the canal running partly through Mr Morris's land. This was offered to show that he was president, and also that the company proceeded to carry the contract into execution.

So far as this evidence goes to show that Robert Morris acted as president, and drew checks or orders as such for the payment of the engineers employed to excavate the canal, these were evidence; but they would not ordinarily be admissible to show payment, until the handwriting of Johnson & Napier to the receipts was proved.   After a lapse, however, of 50 years, such evidence is hardly to be expected; and I should think that where accompanied with proof that the work was contracted for by the parties to whom they were payable and the canal excavated, and being produced by the company from their archives or their treasurer, payment might fairly be presumed by the jury.   An order to pay money is, in the hands of the drawee, evidence of payment. *Blunt* v. *Starkey,* (*Tayl.* 100.)

[Union Canal Company v. Loyd.]

As to the surveys, such as were made while Mr Morris was president, especially under the resolutions passed in 1796, are evidence. That of 1804, however, stands in a different situation, and was not of itself evidence.

Another rejection of evidence complained of, is the statement by Robert Morris in his examination on oath before the commissioners of bankrupt in 1801, with a reference to his leger. This is objected to, as being the declaration of a grantor after he had parted with his title. Perhaps a distinction exists, arising out of the peculiar circumstances of this case, inasmuch as it is alleged that Robert Morris conveyed to those under whom the defendants held with express notice to them of the plaintiffs' previous title from him, and therefore they stand in his place, and an admission by him of things rightfully done under the contract, and whilst he held the title, would be evidence. But, independently of this, we are of opinion it comes within that class of cases in which it has been decided that entries made by a third person against his own interest are evidence after the decease of such person. Such was the character of the evidence here, as it asserts that he had received payment of the strip of land from the company by its appropriation of its price to the instalments on his shares, as by reference to the entry in his leger.

A power of attorney from the Bank of North America to Robert Lewis, dated in June 1809, to transfer four shares of the Delaware and Schuylkill Canal, was also rejected. The Bank of North America owned the defendants' title, it seems, from December 1798 to February 1809; and in January 1809 they were stockholders in the Delaware and Schuylkill Canal Company. The plaintiffs contended that, being stockholders, they had thereby constructive notice of the claim of that company on the land they held. It seems to me that it would be carrying the doctrine of constructive notice very far to hold that a stockholder had notice of all the rights and claims and doings of the company. In practice he knows but little about them; indeed it is to be regretted he does not know more, for then these companies might, perhaps, be saved from the too frequent mismanagement which attends them. In effect, the administration of the company's affairs is lodged in the directors and officers; the stockholders generally do no more than vote, and often but few even perform that important duty. They seldom interfere with the administration of the company's affairs till some danger awakens them to avert if possible a catastrophe. I think it would be going too far to hold the stockholders constructively cognizant of all the claims, titles and proceedings of the corporation, and that the evidence was properly overruled.

We next come to the testimony offered of William Read, a stockholder in the company, to prove service of a notice on Samuel Anderson on the 14th of October 1835, not to build on the premises, which, it is contended, is not evidence, because he does not go to

[Union Canal Company v. Loyd.]

show service of a notice on Anderson, but only Anderson's admissions that he had served a notice upon him. I see no ground of objection. The witness, though a party to the cause, was competent to prove service of a notice, and that seems to be all he did. If so, he is competent also to prove that the person served was on the ground engaged in superintending the buildings, and was the superintendent. As to the contents, it is not usual to give notice to produce a notice; though it is said to have been done here, it is to be presumed to be delivered to the defendants, and in their power to produce.

The remaining evidence is of letters and acts of third persons, and minutes of the company, to show a recognition of their title, and a care and superintendence over the property, and exercise of acts of ownership by the plaintiffs. Here it is to be observed that the plaintiffs' title is of a peculiar kind, acquired under the provisions of the Act of Assembly of the 29th of September 1791, and claimed under a memorandum or entry in writing, not signed by the parties, but accompanied with payment of the purchase money and the taking of such possession as the nature of the title authorized and required, by excavation of the bed of the canal, by the Delaware and Schuylkill Canal in the first instance, and continued by them and by the plaintiffs, successors to their rights and franchises. See *Union Canal Company* v. *Young*, (1 *Whart.* 410). Claiming, as the plaintiffs did, under this peculiar sort of title, the evidence offered was admissible to show the possession taken and held by them, the ownership over the property asserted and exercised during the subsequent periods of time, and the assertion at all times of their claim, as well as to repel any equity which might be set up from the defendants' acts or acts of others on the property, or any alleged dereliction of the equitable title by the plaintiffs.

In *Woolway* v. *Rowe*, (1 *Ad. & El.* 114, 28, *E. C. L.* 53), in ejectment, the defendant, to show the land was not the plaintiff's, but was part of the waste of a manor, was allowed to give in evidence a perambulation of the land as part of the manor made by the lord when no person on behalf of the plaintiff was present, because the lord thereby claimed and dealt with it as his own, and the evidence showed an act of ownership.

As to the question of title by possession on which the court charged, or by presumption of a grant from lapse of time and accompanying circumstances, which has been argued here, it seems unnecessary now to express an opinion, since it is probable the question will depend on the title by contract.

New trial granted.