# Rehill *versus* McTague.

1. Where partners employ clerks to make a statement of the partnership accounts, for the purpose of aiding them in making a settlement between themselves as partners, such statement is *prima facie* evidence, and is binding upon them, as to all items to which they at the time mutually assented; but as to disputed items and claims of each, denied by the other, it is not binding; these items and claims must be determined by the jury from the evidence.

2. It is not error for the court in such case to charge, that interest should not be allowed on the balance found due by one partner to the other; the allowance or refusal of interest depends upon the circumstances of each particular case.

May 20th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, and GREEN, JJ. TRUNKEY and CLARK, JJ. absent.

ERROR to the Court of Common Pleas of *Montgomery county :* Of January Term 1886, No. 275.

This was an action of account render brought by Peter S. McTague against Patrick Rehill for an alleged balance due the plaintiff of $43,319.74 on partnership account, tried under the following written agreement of counsel, drafted by the court at the trial, permitting the jury to find a balance due, for or against plaintiff or defendant, namely : "It is agreed that this action be tried upon the merits and without regard to the pleadings ; that the jury shall determine whether the defendant is liable to account to the plaintiff, and if so liable

[Rehill v. McTague.]

then what amount is due from the defendant to the plaintiff; and if on the other hand it shall be found that the plaintiff is indebted to the defendant, that then a verdict shall be rendered in favor of the defendant for the amount due; and that all partnership matters and accounts between the parties be settled and determined in this issue."

The following are the facts as they appeared on the trial before ALBRIGHT, P. J. of the thirty-first judicial district:

In the year 1866, McTague was a storekeeper at Lancaster, Pa. Rehill was then a well-known and successful contractor of large experience, actively engaged in railroad construction, but of limited education and without any knowledge of book keeping. McTague had married Rehill's adopted daughter and, presumably because of the confidence induced by this relationship, Rehill offered to take him into a contract then in progress substituted in his place.

This was the beginning of a partnership relation, in the nature of co-adventurers upon a series of successive contracts, and not that of a continuing joint partnership, which continued under the name of Rehill & McTague, (with one exception, a contract on the Southern Pennsylvania railroad, where the business was conducted under the name of Rice, Rehill & McTague, each having a one-third interest) until the partnership was dissolved in September, 1874, by the desire and upon the action of Rehill.

No written articles of co-partnership ever existed.

Two or more separate contracts were generally in progress at different places at the same time, usually superintended separately by the respective partners. Large amounts of money were handled, and as both partners indiscriminately used the firm's moneys, receipting for the monthly "estimates" or payments for the work done, and making payments on firm account, mistakes naturally arose, the accounts became confused, proper entries were sometimes forgotten, and often improper debits or credits made to the account of one partner or the other.

The firm books consist simply of time books, showing the daily work of the men, cash books and ledgers kept by single entry.

These irregularities gave rise to frequent disputes, and repeated efforts at adjustment were unsuccessfully attempted.

Rehill becoming distrustful of his partner in September, 1874, notified McTague by letter that the partnership was ended.

In April, 1875, a final attempt was made to adjust the partnership affairs and state an account. For this purpose the late partners repaired to Little York, Pa., with all the books,

papers, and memoranda relating to their transactions, and summoning three of the clerks, Whitman, Kimmet and McCabe, who had been employed upon most of the contracts and were familiar with the work and the details of the accounts, they all remained together there until a final statement was produced, in the following manner :

The clerks first reviewed the books without regarding any erroneous entries. They found the books from this superficial examination showed that Rehill was indebted to the partnership some $20,000 or $30,000, the one half of which he would owe McTague.

They again went over all the accounts, this time noting apparent errors. They found many mistakes and items improperly entered, some, in McTague's accounts by which he was allowed double and even treble credits for the same items. They noted such errors as they thus discovered, and then calling both partners before them, heard their explanations of doubtful items and their respective claims to credits not appearing upon the books.

The work was done in as thorough a manner as could be devised—questions were proposed by the clerks alternately to each partner, and the respective answers written down, and after full discussion would be charged or credited to the proper partner upon their statement.

But no item was put down on the statement unless received without objection, or eventually assented to by each partner.

The clerks were thus constantly engaged for about two or three weeks endeavoring to prepare a statement that would fully present the respective liability of each partner.

At the end of that time they produced a statement in triplicate copies. One they handed McTague; one they gave Rehill ; and the third, produced on the trial, was kept by Whitman. This statement shows the respective liabilities of each partner with the partnership. The simple subtraction of the final balances shows the amount owing by McTague to Rehill.

The defendant requested the court to charge *inter alia.*

2. That if the jury believe that the statement between Rehill & McTague dated April 12th, 1875, was made by the three clerks, Whitman, Kimmet and McCabe at the request of the partners from the books and statements of the partners ; that a copy of this account was immediately handed to McTague; that McTague the plaintiff made no attempt to impeach the correctness of the account so stated for a period of nearly six years and then simply brought suit, without any effort to bring the action to an end so that a period of ten

years has passed since the dissolution and the statement of 1875, that this long acquiescence by McTague and the death of witnesses—the loss of papers—and the great lapse of time since the transactions renders a re-statement of accounts so difficult, and any result so arrived at so uncertain and liable to work injustice, that the jury would be justified in finding that the parties were bound by the statement of April, 1875.

The answer of the court thereto was as follows:

Negatived. Said statement was made out from what is found on the books now before the jury, and from the admissions of the parties or claims of a party not assented to by the other. The jury are to determine what the books show, and what outside claims are proved. I cannot say the reception of the statement by McTague concludes him under the circumstances here mentioned. (Seventeenth assignment of error.)

3. That if the jury find that under all the evidence and the circumstances, the account made by the clerks in 1875 was honestly and fairly made, and that no better adjustment of the rights of the parties can now be reached, then the amount due either partner is to be ascertained by adding to the balance found in the statement of April 1875, the sums received by each, and crediting each with his subsequent disbursements.

The answer of the court thereto was as follows:

Negatived. But if it is found in addition to what is here stated that the parties agreed to the items entering into said statement, and that no mistake or fraud in the making of said account is shown, then the proposition here stated is affirmed. (Eighteenth assignment of error.)

4. That if the jury disregard the statement of 1875 and undertakes to adjust the partnership accounts as if no such accounting has taken place, then in this action the defendant can only be made to account for the moneys received by him, and McTague cannot recover for any excess of payments or receipts which he claims to have made, that is for over advancements or payments by the plaintiff beyond what the defendant advanced.

The answer of the court was as follows:

In view of the agreement as to what is to be determined by this trial this point cannot be affirmed. It is answered in the negative. (Nineteenth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

Now gentlemen, the contention on the defendant's part is, as I have already said once or more, that you are to take this statement made for the parties, by the three clerks, as evi-

dence of how the parties stood at that day, and in fact the defendant says you are to take this statement as to how they stand to-day, except so far as it will be modified by the moneys received and paid out by the plaintiff and defendant as to the two roads which were not yet settled up ; and the plaintiff contends that it is a mere memorandum, was no settlement, not agreed upon as to all the items. The plaintiff says as to many and perhaps most items, the memorandum made by the clerks is correct, as is shown by the plaintiff's statement which you will have before you. The defendant has contended strenuously and very pointedly in the propositions submitted to the court, which I must answer, that that statement under the circumstances is to be taken as conclusive, or that if the jury find certain difficulties in the way of arriving at a conclusion, that there is such confusion and uncertainty according to the showing on this trial that no satisfactory result can be reached, that then the statement of the clerks is to be taken, and you are to find a verdict accordingly, except as far as it is modified by the few items which would properly come in after the settlement was made in April, 1875. This question, thus presented, is somewhat perplexing. I have resolved it in this way, and so instruct you, that you are not to take under the evidence in the case, that statement as conclusive as a whole under any aspect of the facts. There is of course such a thing as parties agreeing upon an account, and when they have so agreed it becomes an ordinary debt between them, and is recovered not in a proceeding such as this, but in an ordinary action. And it is also true that in an action for account, whether it is pursued in equity or in action of account render, an account stated between the parties and agreed to, but which is defective because mistake or perhaps fraud entered into it, as to certain items, may be received, the statement taken and evidence received respecting the items concerning which it is said there is fraud or mistake, and dispute as to them adjusted, and the statement thus modified taken as the account between the parties ; but you are not to view the statement in that light. But gentlemen, that statement, which is in evidence, (when I speak of the statement I mean that memorandum made by the clerks, which I believe is signed by them, in April, 1875) that you may consider as to all disputed items between the parties to-day as to which anything was done when those clerks were together. If from the evidence you can find that McTague claimed something and that Rehill assented to it, and on the other hand that a claim was made by Rehill and assented to by McTague, or an objection made by the one and agreed to as valid by the other ; if from the evidence of the

[Rehill v. McTague.]

clerks or of the parties, or of anybody else, you can find that from what was said and done there by Rehill & McTague, that any one of these disputed items is proved or disproved, you may consider that evidence and reject or receive the item accordingly. And it may be, gentlemen, that from the evidence of what was said and done there touching these disputed items, that a great deal of light will be thrown upon the case, and possibly your labors considerably lightened. For instance, if any witness who is believed by you to be truthful, says that either Rehill or McTague claimed a certain thing was due him then regarding his account with the firm, and that the other side agreed to it, and nothing appears before us in this trial to show that that was a mistake, and that the assent thus given was given under mistake, why then you will say, "That item is proved. The evidence of what happened there at that settlement or attempted settlement makes that clear."

So also as to an item which one side or the other objected to and the opposing party acquiesced in the objection, it would also be made clear in that way. To that extent and in that way you may consider that statement, and when I say that, I do not mean to limit the attention and weight you are to give to the statement to my declaration in this respect alone, but anything that is legitimately and naturally proved by what was said and done there, may be taken by you as proof in this case bearing upon the question of accounts; but I say to you, you are not to take the statement as binding the parties in any contingency.

*      *      *      *      *      *      *

If you should find that there was a balance due the defendant, or in calculating what the defendant is to be credited with, if your verdict is the other way, you are not to credit interest on any sum.    (Fifth assignment of error.)

*      *      *      *      *      *      *

And inasmuch as I recall no evidence in the case from which you can find that the parties agreed that interest was to be allowed, and inasmuch as I discover no equities in the case, which according to the rules of equity make an allowance of interest admissible, therefore I say to you that interest on money is not to enter into the calculation of the account by you.    (Seventh assignment of error.)

*      *      *      *      *      *      *

Inasmuch as I discover no equities in the case which make an allowance of interest admissible, therefore I say to you that interest on money is not to enter into the calculation of account by you.    (Ninth assignment of error.)

*      *      *      *      *      *      *      *

Your verdict will be that you find in favor of the plaintiff

and against the defendant a certain sum, naming it, or that you find in favor of the defendant and against the plaintiff a certain sum. (Twenty-sixth assignment of error.)

Verdict for the plaintiff in the sum of $24,489.24.

By direction of the court this was reduced to the sum of $17,297.87, by the plaintiff filing a *remittitur* for $7,191.37. Judgment was entered upon the verdict as thus reduced, whereupon the defendant took this writ filing *inter alia*, the above assignments of error and the following:

The tenor of the whole charge was calculated to mislead the jury as to the law and the evidence, and to lead them to suppose that material matters of fact were matters of law which they had no right to consider. (Twenty-fifth assignment of error.)

The entire statement of the plaintiff's claim sent to the jury by the plaintiff was not submitted to defendant's counsel. (Twenty-seventh assignment of error.)

The verdict was not warranted by the evidence. (Twenty-eighth assignment of error.)

*Henry C. Boyer* and *George F. Baer*, for plaintiff in error. —While a judge has a right to express an opinion upon the evidence, he must not infringe on the province of the jury so as to relieve them from pronouncing an intelligent judgment for themselves—he must not mislead them or control their deliberations: Mohney *v.* Evans, 1 P. F. S., 84; Leibig *v.* Steiner, 13 N., 472; Goersen *v.* Commonwealth, 3 Out., 401; Neiman *v.* Wood, 1 W. & S., 68; Pa. R. R. Co. *v.* Berry, 18 P. F. S., 278; Madar *v.* Ederole, 62 Pa. St., 160; Beyner *v.* Thompson, 74 Id., 168.

An account rendered and not objected to within a reasonable time, is to be regarded as admitted by the party charged as *prima facie* correct. If certain items in an account under such circumstances are objected to within a reasonable time, and others not, the latter are to be regarded as covered by such admissions. These propositions are in accordance with the leading authorities on the subject: Wiggins *v.* Burkham, 10 Wall, U. S., 129; Lockwood *v.* Thorne, 1 Kernan, 170; 1 Story's Eq., 526.

Heath *v.* Corning, 3 Paige (N. Y.), 566, decides that a partner would be deemed to have acquiesced in an account to which he did not object in a reasonable time: Spangler *v.* Springer, 10 Harris, 454; Sergeant's Ex'rs *v.* Ewing, 6 Casey, 75; Phillips *v.* Tapper, 2 Barr, 323; Porter *v.* Patterson, 3 Harris, 229; Levan *v.* Cullen, 7 Barr, 281; Jones *v.* Dunn, 3 W. & S., 109; Thompson *v.* Fisher, 1 H., 310.

Sergeant's Ex'rs *v.* Ewing, got into the Supreme Court again,

[Rehill v. McTague.]

and is reported in 12 Casey, 164, the court holding that where an account is presented, examined, corrected as to only one item and returned as approved, it was in effect an account stated and the jury should hold the parties to it.

Assumpsit would have lain by Rehill for the balance due him as shown by that account of 1875: Brown v. Agnew, 6 W. & S., 235.

An action will lie on a stated account on the implied promise: Van Amringe v. Ellemaker, 4 Barr, 281; Gilles v. McKinney, 6 W. & S., 79; Galbraith v. Moore, 2 Harris, 86; Borrell v. Borrell, 9 Casey, 492; Wright v. Cumptsey, 5 Wr., 103.

The jury may infer from the evidence whether the account had been settled between the parties and a balance struck—such a balance is a debt without proof of an express promise: Knorr v. Hoffman, 15 Smith, 130.

An account rendered becomes an account stated unless objected to in a reasonable time: Colket v. Ellis, 10 Phila., 375; Story's Eq. Jur., 1, 526; Sherman v. Sherman, Vern., 276; Irvine v. Young, 1 Sim. & Stu., 333; Wiggins v. Burkham, 10 Wall., 129.

The acceptance need not be expressed, it may be implied: Murray v. Toland, 3 John Ch., 569; Freeland v. Heron, et al., 7 Cranch, 147.

Signing the contract is not necessary to make it a stated one, but it is keeping it any length of time without making objection that binds the person to whom it is sent: Willis v. Jerinyen, 2 Atk., 251.

Under our peculiar system of administering equitable principles in common law actions, the judge presiding at the trial performs the functions of a Chancellor: Rowand v. Finney, 15 Norris, 192.

In Pennsylvania, equitable principles are to be applied by the jury, under the direction of the court, in the same manner as legal ones. The Act of Assembly giving chancery powers to the courts, does not oust that jurisdiction as theretofore exercised under the forms of common law proceedings: Biddle v. Moore, et al., 3 Pa. St., 161; Hawthorn v. Bronson, 16 Id., 269; Piersol v. Neil, 63 Id., 420; Church v. Ruland, 64 Id., 432; Robinson v. Buck, 71 Id., 386.

Where an action of assumpsit is brought as a substitute for a bill in equity, the chancery rule as to parties must be adopted: Mathews v. Stephenson, 6 Pa. St., 496.

Aaron S. Swartz (John H. Fort with him), for defendant in error.—The charge of the court must be taken as a whole and it will not do to cite disconnected sentences here and there

[Rehill *v.* McTague.]

and rely upon them to sustain the assignment of error: Carrathers *v.* Dunning, 3 S. & R., 373; Little Schuylkill Navigation R. R. *v.* French, 2 W. N. C., 718.

As the court viewed the question it resolved itself to the simple proposition,—did the parties assent to the items in the statement? And this was properly left to the jury, for it was a question of fact to be determined solely from the evidence. No other force could be given to that statement for in law it was not a settlement.

1. Because the partnership work was unfinished, large railroad contracts were open and not included in the statement, nor was there any attempt to value the assets or consider the liabilities of the firm.

2. Because the statement did not attempt to show an account between the partners, only an account of each partner with the firm.

Such a statement is not a settlement, and an action of account render will lie notwithstanding the statement: Ferguson *v.* Wright, 61 Pa. St., 258.

The same distinction is drawn in Little *v.* Stanton, 8 Casey, 301; Hocker *v.* Hevener, 2 Pearson, 78.

It matters not how honest the accountants may be or how just and fair their statement, if the assent of either partner is wanting it is a nullity. There must be a settlement in which both concur: Andrews *v.* Allen, 9 S. & R., 241; Ozeas *v.* Johnson, 1 Binn., 191; Lindley on Partnership (last edition), page 968.

An account made by one partner and retained by another is of little consequence, because it lacks his assent. So here, the statement made by the clerks is without the assent of either partner, and yet the court is asked to charge the jury that without finding any such assent this statement shall be taken as proved for all that it contains. The law does not deal so unjustly: Spangler *v.* Springer, 22 Pa. St., 454.

We think the court was right in refusing to allow interest on any balance found due from one partner to another, but we are perfectly willing that this court should so modify the verdict as to accommodate the plaintiff in error. We do not object to interest on the balance found due McTague; interest from January 1st, 1876, to date of verdict will add $10,000 to our judgment.

Interest is not allowable between partners: Brown's Appeal, 89 Pa. St., 139.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

The item of $1,350, claimed by the defendant against the

plaintiff having been remitted from the verdict, and thus practically allowed as a credit, the assignments of error which relate to it alone, are eliminated from the present discussion. These are the 3d, 16th, 23d and 24th.

The item of $4,900.37 part of the sum recovered and the claim for which, by the plaintiff, grew out of the second track contract on the East Penn. road between Emaus and Alburtis, was also remitted from the verdict and the assignments relating to that item are also immaterial: these are the 2d, 8th, 15th, 22d and 29th.

The first assignment is entirely unimportant. The remark of the witness was only a casual and general statement regarding the Southern Pennsylvania contract, descriptive of its substance and not at all a matter of controversy, given incidentally in the course of his testimony, and was simply objected to after it was made with no application to strike it out. Even if the reception of the remark in evidence were error we would not reverse in such circumstances, but it was not error merely to refuse to sustain such an objection.

*Fifth, seventh, and ninth assignments.* We see no reason for charging interest on either side in such a case as this, and as its rejection is more beneficial to the defendant than to the plaintiff he has no reason to complain of the action of the court on this subject.

We do not sustain the 25th or 26th assignment because we do not think the tenor of the charge was to mislead the jury either as to the law or the evidence, and the direction to find either for the plaintiff or defendant whatever sum might be found due from the one to the other, was simply doing what each party asked. Each claimed a verdict against the other for an amount due, and neither of them asked for a verdict of " no accounting."

The 27th assignment is not in condition for us to act upon it. The record does not show any exception to any action of the court in allowing the paper in question to go to the jury, and as there is no exception there is nothing upon which to base an assignment of error. The assignment itself simply alleges as error that the entire statement was not submitted to defendant's counsel. Plaintiff's counsel allege that defendant's counsel had every opportunity of seeing it, and that the court constantly referred to it in the charge. We of course can not verify by the record an allegation that it was not submitted to defendant's counsel. If there is any substance in this complaint the proper remedy was by a motion for a new trial and this was adopted, but the court declined to grant the new trial, and we can not review that action of the court.

[Rehill *v.* McTague.]

The 28th assignment is not sustained because we can not say there was not evidence to warrant the verdict. That depends in this case largely upon the credibility of witnesses and that is a matter exclusively for the jury.

The remaining assignments raise substantially the one question whether the settlement made by the three clerks in 1875 is to be regarded as "an account stated" in equity, conclusive between the parties except for fraud or mistake.

The court declined to give it a conclusive effect, but did give it much weight, and in fact held that as to all items in it which were claimed by one party and assented to by the other the party so assenting would be bound.

The treatment of this subject by the learned court below seems to us as exceedingly fair and in strict accordance with the authorities. The *statement* in question, claimed by the defendant to be conclusive, was not prepared by the parties or either of them; it was prepared by three of their clerks who examined the books by themselves in the absence of the parties. When they had partly finished their work they called the parties before them and asked them questions as to many matters they, the clerks, did not understand. Then they took the answers to their questions and reviewed their work, making charges and corrections and again called the parties before them. There were claims made by each partner which did not appear in the books. As to these they did not attempt to make a settlement themselves (at least so Whitman one of the clerks testifies) but just put down whatever each party claimed, not deciding whether it was correct or not, simply taking the partner's word for it. The testimony on this subject is too long to be repeated here, but some portions of it may be quoted. Thus Whitman, who seems to have been the most active of all and was the spokesman in their interviews with the partners, says: "The books were brought to my place and we were told by the partners or at least by Mr. Rehill to try and make a statement as near as we could, of how they stood. . . . . . We found a great many things we were curious to question them on; there were a great many charges entered twice; there was a great many bank accounts we did not understand." After stating that they took the answers of the parties and worked again for a week he adds—"at the end we made out a statement for each party. We first went over these accounts; when they came in, I don't think we showed them any figures. I said there were a great many things we did not understand. I think I made the remark that from the books Mr. McTague had credit of some $30,000 or $40,000 more than Mr. Rehill, that Mr. McTague's credits were that much more than Mr. Rehill's; by

that I meant that Rehill owed McTague . . . . . when we started out to make out this account we were trying to find out how they stood between each other; the way I understood it we were instructed simply to find out how they stood in their business relations to each other; there was never anything expressed that I knew of that it was to be a final settlement. We were to render an account showing how they stood between each other, that is the way I understood it; we gave the statement to them as we found it from their books and from their statements; made the statements as the books showed and as they claimed . . . . . we gave them as they asked and took their word for it, we had nothing else . . . . . I am not prepared to swear that these books were in such an intelligent condition that I could make up a statement from them by correcting the improper balances and additions and subtractions. . . . . . When I signed that statement I signed it as a correct statement as I could make out with my knowledge of book-keeping. I do not say that it is correct; after that statement had been made up Mr. Rehill and Mr. McTague were called in and each of them was given a copy . . . . . it was simply given to them as a statement of the best result we could make of the books and their claims . . . . . wherever there was no evidence in the shape of books to make up the statement we took Mr. Rehill's statement; if Mr. McTague made any we considered them . . . . . we took them both for what they claimed; we took their word; we had no right to dispute their word; if either party made a claim we took it at their word and put it down : that was for them to settle hereafter; we were making out a statement of their affairs as near as we could make it and simply noting where it came from; as far as the books were concerned we took the books but there were other statements outside which we were bound to take their word for . . . . . we did not dispute either of their words. . . . . . This statement was for the purpose of enabling them to make a settlement; that was the way I understood it; I am not prepared to answer whether the settlement was to conclude them; they were not bound by it; they did not bind themselves to stand by our conclusions; we were asked to make a statement to the best of our knowledge from all the information we could glean from them and the books; we could not get along with the account while they were there, they would dispute over a single article for a day; I think they were not agreed upon the items . . . . . we had a number of different charges to deal with that did not appear in the books; this credit to Mr. Rehill is a personal statement from Rehill; when they gave us a personal statement we took it for granted that it was correct; . . . . . we did not take

[Rehill *v.* McTague.]

the authority to pass upon the propriety of any of these accounts; the object of putting them into the account was that they should agree and make an arrangement to settle so that they could have the thing before them in some kind of shape; we tried to get it in tangible form . . . . . we prepared statements for them to settle; we did not settle for them."

In view of the foregoing, and other testimony of a similar kind, it is impossible for us to regard the statement of 1875 as a stated account, conclusive between the parties. It was not made by one party and delivered to the other; it was not an account alone of what appeared upon the books of the firm, but of such matters and also of mere verbal claims made by each, which were set down in the statement upon the bare assertion of the party without question, without any kind of verification, without even any attempt by the clerks to adjudicate or determine their correctness, without the assent of the opposite party and the statement itself is not a statement of account between the partners but between each partner and the firm. Even if it were free from these objections and were in truth an account stated as between the partners, it would not be absolutely conclusive so as to be incapable of impeachment for mistake as to items under the well established equitable right to surcharge and falsify. This right simply affects the burden of proof which in proper cases of stated account rests upon the party against whom the account is set up, the inference being that the account as stated is correct and the duty of disproving or rebutting the inference resting upon the opposite party who otherwise might require original proof of the items of the account.

The text books and the cases are quite uniform in their description of the stated account between partners and the effect to be given to it. Thus in 1 Collyer's Law of Partnerships § 298 (Ed. of 1878), it is said "It is to be observed that the fact that an account has already been *rendered* by the defendant to the plaintiff does not deprive the latter of his right to have the same account taken under the direction of a court of equity; to have that effect an account must not only have been sent in to the plaintiff but also have been acquiesced in by him. . . . . . A stated account may be impeached either wholly or in part on the ground of fraud or mistake. If there be fraud or if any mistake affects the whole account, the whole will be opened and a new account will be directed to be taken without reference to that which has been stated; but if there be no fraud, and if no mistake affecting the whole account can be shown, but the correctness of some of the items in it is, nevertheless, disputed, the account already stated

[Rehill *v.* McTague.]

will not be treated as non-existing, but will be acted upon as correct, save so far as the party dissatisfied with any item can show it to be erroneous. In a case of fraud an account will be opened *in toto*, even after the lapse of a considerable time ; but if no fraud be proved an account which has been long settled will not be re-opened *in toto ;* the utmost which the court will then do will be to give leave to surcharge and falsify." The right to surcharge and falsify is thus defined by Lord Chancellor HARDWICKE in Pit *v.* Cholmondeley, 2 Ves. Sen., 565—" the *onus probandi* is always on the party having that liberty ; for the court takes it as a stated account and establishes it ; but if any of the parties can show an omission for which credit ought to be, that is a surcharge ; or if anything is inserted that is a wrong charge, he is at liberty to show it, and that is falsification ; but that must be by proof on his side ; and that makes a great difference between the general causes of an open account and where right to surcharge and falsify, for such must be made out. Now this is not only after a great length of time, but also after a number of accounts settled between the parties." In Vernon *v.* Vawdey, 2 Atk., 119, it was said, " If there are only mistakes and omissions in a stated account the party objecting shall be allowed no more than to surcharge and falsify."

In 1 Sto. Eq., § 523, the subject is thus presented: " If, therefore, there has been an account stated, that may be set up by way of plea, as a bar to all discovery and relief, unless some matter is shown, which calls for the interposition of a Court of Equity. But if there has been any mistake or omission, or accident, or fraud, or undue advantage, by which the account stated is in truth vitiated, and the balance is incorrectly fixed, a Court of Equity will not suffer it to be conclusive upon the parties, but will allow it to be opened and re-examined. In some cases, as of gross fraud, or gross mistake, or undue advantage, or imposition made palpable to the court it will direct the whole account to be opened and taken *de novo.* In other cases, where the mistake, or omission, or inaccuracy, or fraud, or imposition is not shown to affect or stain all the items of the transaction, the Court will content itself with a more moderate exercise of its authority. It will allow the account to stand, with liberty to the plaintiff to surcharge and falsify it; the effect of which is to leave the account in full force and vigor as a stated account except so far as it can be impugned by the opposing party who has the burden of proof on him to establish errors and mistakes." In § 525, the terms " surcharge " and " falsify " are defined substantially the same as in the above citation from Collyer, and

[Pepper *v.* City of Philadelphia.]

in § 526, an "account stated" is described, and its effect also in a similar manner to that already given.

The learned Court below treated the statement made by the clerks in accordance with the foregoing principles, they allowed it to be given in evidence, thus making it *prima facie* evidence; as to all items to which the parties assented they held it binding; to items claimed by one and assented to by the other, binding effect was given; as to disputed items and claims denied the jury were instructed to determine them according to the best light they could obtain from all the testimony; they were instructed that the statement was not conclusive, but much weight was given to it, and as we think all the consideration to which it was entitled was allowed by the court. The accounts were voluminous and somewhat complicated and there was much dispute as to the items, or many of them. Instead of there being proof that the parties assented to the statement made by the clerks, the evidence was that they would dispute over a single item for a day, and the clerks made no attempt to adjust these disputes, but simply put down the items of adverse claims just as they were claimed and not as they were decided, for they were not decided at all. Such an account can not in any point of view be regarded as a stated account between partners assented to either expressly or by implication.

Most of the authorities cited in the paper books are inapplicable, as they do not relate to this class of cases and no one is in conflict with the familiar equity principles to which we have referred. Upon a review of the whole case we fail to discover any error in the treatment of the cause by the learned Court below, and therefore

The judgment is affirmed.