## Krick, Appellant, v. Fairy Silk Co.

Argued January 24, 1933.   Before Frazer, C. J., Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*E. H. Deysher,* with him *Randolph Stauffer,* for appellant.

*C. H. Ruhl,* with him *E. L. DeLong,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 20, 1933:

This is an appeal from an order granting a new trial after the third trial of the case, two former verdicts for appellant having been set aside and new trials granted. Ordinarily orders granting a new trial will not be interfered with unless there is a gross abuse of discretion by the trial court, or unless the court certifies that the new trial is based solely on the legal question decided and not on any discretion lodged in the court to grant it.

The court below here stated: "Under the evidence, we are of the opinion that no court will ever permit a finding in favor of the plaintiff for Fritz's overcharge on the silk to stand." It is because of this statement, and for the further reason that this was the third trial of the issue, that we consider the case.

We are in complete accord with the quoted statement. The principal issue was an alleged overcharge of $17,-610.23 for silk sold to appellee, and to that charge only the statement of the court below was directed.

At the trial, this issue resolved itself into that of whether Fritz, when he purchased the silk, was acting for himself or on behalf of appellee. The surrounding facts clearly solve the problem by incontrovertibly establishing an estoppel which forbids a denial by appellant that the silk was his own.

In March, 1920, Fritz, appellant's husband, a manufacturer of hosiery, bought fifty bales of raw silk, 20 bales at $14 a pound, and 30 bales at $14.35 a pound. On July 28, 1920, appellee was incorporated by Fritz, Hess and Strause. Fritz agreed to purchase land, erect a building, install machinery and contract for and furnish material. Fritz was to receive from the corporation, without profit to himself, as payment for this outlay,

cash and stock. This agreement was executed. Fritz became president and treasurer of the new company, Hess, vice-president and general manager. Fritz dyed fabrics for appellee for which he was to be paid and was entitled to a salary. There was a mutual running account between him and appellee from 1920 until March, 1923. Fritz died May 28, 1924.

The market price of the silk at the time it was received by appellee had dropped from the contract prices of $14 and $14.35 per pound to the price of $7 per pound, and Fritz charged the silk to appellee at the contract price.

Appellant, his executrix, claimed under the joint account some $19,000, no credit being given in it for this overcharge of $17,610.35. As stated, this difference is the principal item in dispute. The claim is evidenced by an account stated, supported by the testimony of one Miss Dunn, a bookkeeper for Fritz. She testified that Hess handed her the accounts for entry upon Fritz's books, and told her, prior to appellee's incorporation, that Fritz was to purchase silk for the new company.

The general rule is that when an account is stated between parties, a promise on the part of a debtor to pay the other party the balance shown to be owing is implied, but this is not an absolute and invariable rule. If the account as stated has not been relied on, the parties are not estopped from varying it or showing it to be in error as to specific items: O'Bold's Est., 221 Pa. 145, 146; Rehill v. McTague, 114 Pa. 82. The evidence does not indicate that Fritz, in any way, changed his position in reliance upon the accounts stated. Appellant recognizes there are errors in these accounts and has altered them. It would be manifestly unfair to hold either party bound unequivocally by a statement of account concededly erroneous. But this does not imply that the whole statement is valueless. As to items not protested, it is binding; as to items protested, the burden of proving error rests on him disputing its accuracy: Rehill v. McTague, supra. Furthermore, we are unable to discover in the record any

authority for Hess to act for, or any ratification of such acts by, appellee.

However, against the uncertain and slightly implicational evidence of the company's obligation to Fritz, there is testimony which appellant is not in a position to dispute and which estops a denial of the credit.

At the meeting of the stockholders of the company on August 18, 1920, Fritz was elected president and treasurer. As president he presided at all meetings and under the by-laws had general supervision of the affairs of the company; as treasurer, he had the custody of all moneys and securities of the company and was required to keep regular books of accounts. At the annual stockholders' meeting held on March 10, 1922, Fritz, while in the chair, submitted, as treasurer, the financial report of the company for the year 1921, which was received, approved, and recorded. That report showed among the assets of the company, as an account receivable from Fritz himself, the sum of $19,031.25, which was the sum of the items $1,421.02, the balance owing by Fritz to defendant on December 31, 1921, and the $17,610.23, which was the overcharge for silk in question. A minute of the directors' meeting held on July 15, 1922, at which Fritz presided, shows this same financial report. Similarly the minutes of another directors' meeting, held August 11, 1922, show this same $17,610.23 as due from himself to the company.

The corporation income tax return for the company for the year 1921, made by Fritz as president and treasurer, shows this asset of $19,031.25 the sum of the items $1,421.02 and $17,610.23, as an account receivable from Fritz.

The capital stock return to the State for the year 1921, made by Fritz as president, sets forth as an asset of the company accounts receivable in the sum of $36,353.32, which included the item of $17,610.23. The correctness of the corporation minutes is unimpeached and unexplained (although appellant had the privilege of doing both: Loeffler's Est., 277 Pa. 317; Rose v. Independent

Chevra Kadisho, 215 Pa. 69; Hammill v. Supreme Council of Royal Arcanum, 152 Pa. 537) and hence they are prima facie evidence of the facts therein stated: Rose v. Independent Chevra Kadisho, supra; Union Canal Co. v. Loyd, 4 W. & S. 393. The content of the minutes was corroborated by the corporate income tax return and capital stock report of appellee, sworn to by Fritz as appellee's president or treasurer, or as both. These facts create such a situation as to estop appellant from denying the overcharge. Neither the company nor its stockholders are to be misled by their officers in this fashion. It would be most improper to permit a corporate officer, or those claiming through him, to refute for his or their own benefit solemn statements of fact made in his official capacity.

Appellee was never reimbursed for this overcharge nor was any effort made to explain the evidence produced concerning it. The jury should have been instructed from the undisputed written evidence that the overcharge was an established credit for defendant and should be allowed.

Subject to the foregoing opinion, the order for a new trial is affirmed, costs to be paid by appellant.