William P. Miller, plaintiff in error, *vs.* William H. Frick, Administrator of the Estate of Catharine E. Frick, deceased, defendant in error.

1. **Witnesses—Transaction with Decedent.**

In replevin for jewelry and furniture of plaintiff administrator's decedent, testimony of defendant that he himself had paid with checks for the furniture bought by and billed to decedent and in her possession at the time of her death *held* inadmissible as relating to a transaction with decedent.

2. **Evidence—Documentary Evidence—Exclusion for Lack of Connecting Evidence.**

In replevin, where testimony of defendant that he had given a check to a furniture company in payment for property mentioned in the writ and which he had purchased through decedent was properly rejected as relating to a transaction with decedent, the check itself was properly excluded from evidence as not connected with the case.

(*June 27,* 1919.)

Curtis, Chancellor, Conrad and Heisel, Associate Judges, sitting.

*Robert G. Harman* and *Daniel O. Hastings* for the plaintiff in error.

*Levin Irving Handy* and *W. W. Knowles* for defendant in error.

Supreme Court, June Term, 1919.

Error to Superior Court for New Castle County, No. 9, June Term, 1919.

Action of replevin by William H. Frick, administrator of the estate of Catherine E. Frick, deceased, against William P. Miller. To review judgment for plaintiff, *ante,* (107 *Atl.* 391), defendant brings error. Affirmed.

This was an action of replevin brought by the plaintiff to recover certain articles of jewelry and furniture in the possession of the defendant. At the time of the death of Catharine E. Frick, she was, and had been prior thereto, engaged in hotel business in the city of Wilmington, having in her possession the articles of personal property in question in the hotel which was owned by the defendant, who, upon her death, took possession of the hotel and the property therein. Upon the service of the writ

Statement.

of replevin, the brooch and diamond ring were delivered to the sheriff but the defendant gave a property bond for the furniture and retained the same.

The errors assigned were:

1.  The court erred in charging the jury:  "With respect to the articles replevied, the two pieces of jewelry, known as lady's large brooch, and diamond ring set with small stones, were delivered by the sheriff to the plaintiff and admitted by the defendant to be the property of the plaintiff, and for the detention of these two articles by the defendant, the plaintiff is entitled to nominal damages."

2.  "The plaintiff claims that the goods and things replevied and now detained by the defendant, are valued at $2,510.00."

3.  "For the plaintiff to recover   *   *   *   it is necessary for him to prove by preponderance of evidence that   *   *   *   the money, goods and chattels were wrongfully detained by the defendant in New Castle county"
—instead of charging as prayed for, as follows:
"If the jury believe that the plaintiff did not allege and prove venue, or that the goods were not taken or detained by the defendant and in New Castle county the plaintiff cannot recover."

And this particularly in view of the court saying at the trial:
"Since the passage of the statute in the Code, detention is all that is required.  Demand is not necessary, and the sheriff in this case has testified that he executed the writ in this county.  We think that is sufficient proof of the detention."

4.  The court erred in not charging the jury:
"The plaintiff must prove by preponderance of evidence that Catharine E. Frick owned and had the right to the exclusive possession of the goods in dispute at the time of her death, or he cannot recover."

And in charging as follows:
"The action of replevin lies for the possession of goods and chattels unlawfully detained from the owner or person entitled to the possession thereof."

And again:
"If from the evidence you believe at the time this action was begun, that the plaintiff was entitled to the possession of the money," etc.

And again:
"For the plaintiff to recover   *   *   *   it is necessary for him to prove   *   *   *   that Catharine E. Frick owned and had the right to the possession of the money."

5.  The court erred in striking out the testimony of the defendant   *   *   *   and in deciding that said testimony constituted a "transaction" with the decedent Catharine E. Frick.


The testimony is as follows:

*Mr. Harman:*—Q.  Doctor, just look at those checks a moment, will you please?   *   *   *   Q.  Who gave those checks?   A.  I did.   Q.  What were they given for?   A.  Furniture.

*Mr. Handy:*—I object.  We have a statute by which this man's mouth is sealed towards any transaction with the deceased.  He cannot testify to anything about paying the bills for Catharine E. Frick.

*Mr. Harman:*—He is not doing it; he is paying his own bills and it is his dealings with the furniture company that we are inquiring about.

*Mr. Handy:*—He has stated that he proposes to show that these checks were used to pay those bills which have been rendered here against Catharine E. Frick.

RICE, J.:—We did not so understand his statement. Of course, they would not be permissible if that were the object. We cannot exclude it at this time. It may be subject to a motion on your part later, if not connected or if it be proved to be a transaction with the deceased it would have to be stricken out.

Q. What did you say those checks were given for? A. Furniture. Q. Bought from whom? A. From the Wilmington Furniture Company. Q. What became of that furniture? A. It went to the Flodette, 807–9 French street. Q. Where is it now? A. It is there now. * * * Q. State, if you can, whether or not the furniture, that was bought with those checks, which you have testified went to the Flodette Hotel and which you have testified is there to-day, is included in the writ, or a portion of it. (Objected to by Mr. Handy; objection overruled.) A. Yes, sir. (The checks above referred to are here offered in evidence subject to cross-examination.)

*Mr. Handy:*—X. What furniture in the writ was bought by these checks or any one of those checks? A. What articles in this paper? Q. Yes; any one? A. I find right here fifty bed spreads, seventy-five pillow cases, thirty-five pillows, one hundred sheets. X. There were fifty bed spreads bought by those checks? A. Yes. Q. Who bought them? A. I ordered them through Miss Frick from Mr. Maroney.

HEISEL, J., delivering the opinion of the court:

This is an action of replevin by the administrator of Catharine E. Frick for the recovery of certain pieces of jewelry and household furniture from the plaintiff in error, William P. Miller.

The jewelry was delivered by Miller to the sheriff. The furniture, which was held by Miller under a property bond, was in a hotel, owned by him, and managed or operated by Catharine E. Frick, the deceased, during her lifetime at 807–9 French street, Wilmington, and in her possession at the time of her death. The furniture in question was claimed by Miller to be his property. It was also claimed by the administrator of Catharine E. Frick to be her property.

There are five assignments of error. The first four assignments relate to the charge to the jury. As to these, we think it sufficient to say that the charge of the court below was full and complete and stated fully and carefully the principles of law applicable to the facts of this case, and we find no error therein.

The fifth assignment of error charges that the court erred in striking out certain testimony of the defendant below, Miller,

and in deciding that said testimony constituted a transaction with the deceased, and, therefore, incompetent under our statute.

The testimony was offered to show payment by Miller to the furniture company, from whom he claimed they were purchased, for certain articles described in the writ. For this purpose, checks signed by Miller payable to the furniture company were offered in evidence. In the course of Miller's cross-examination, he testified that the articles, for which he had paid with the checks, had been purchased, by him, from the furniture company, through Catharine E. Frick, the deceased. This testimony the court rejected.

It will be remembered that the principal question in dispute between the parties was the ownership of the property described in the writ and not delivered to the sheriff. It appears some of the property was bought from a furniture company, and billed to Miss Frick, delivered to her and in her possession, at the time of her death. Those things would be evidence from which ownership on her part might be inferred. To rebut the inference to be drawn from this evidence, plaintiff endeavored to testify that he had bought the property through her; that is, while the property may have been delivered to her and in her possession at the time of her death, nevertheless, she was not the owner, but was acting simply as his agent. If she was acting as his agent and not for herself, it must have been because of some agreement or understanding of some kind between them. Was such agreement or understanding a transaction with her within the meaning of the statute?

The court in *Krause v. Emmons*, 6 *Boyce*, 104, 125, 97 *Atl.* 238, 247, said:

"It clearly appears from our statute that in actions by or against executors, etc., the parties are not disqualified from testifiying in their own behalf, but are disqualified only from giving testimony concerning any transaction with or statement by the testator, etc., unless they are called to testify by the opposite party.

"The purpose of the Legislatures in passing statutes of this kind is equality. In this state the intention was to prevent both parties, unless called as a witness by the opposite party, giving testimony of transactions with or statements by the deceased, concerning which the deceased, if living could of his own knowledge contradict, corroborate or explain.

"So much depends upon the particular facts in each case, that it would practically be impossible to define the word 'transaction,' as used in the proviso, in terms sufficiently comprehensive so as to include all facts which would be considered a transaction, and at the same time exclude all facts which would not be a transaction within the meaning of the act.

"In general terms a transaction, within the terms of the statute, may be said to be an occurrence or action of which both decedent and the other party had knowledge, and to which the decedent if living would be equally qualified to testify with the other party."

[1]   Under the statute as thus defined, we are clearly of the opinion that the defendant below was attempting to testify to a transaction with the deceased, for to be relevant the testimony must have related to some transaction of Miller with the decedent.   Therefore, there was no error in the court in striking out the testimony in question.

[2]   At the hearing there was considerable argument, on the part of one of the counsel for the appellant, to the effect that the court erred in not admitting into evidence a certain check offered by appellant. at the trial below and ruled out.   While it is not at all clear that the assignments of error raise that question, we have, nevertheless, considered it and are of the opinion that the court did not err in refusing to permit the checks to be admitted under the state of the evidence at the time it was offered.   The only evidence offered to connect the checks in question with the parties to this action, at the time the checks were offered in evidence, was the evidence of the defendant, Miller, to the effect, that he had given the check to the furniture company in payment for certain property mentioned in the writ, and which he had purchased from the furniture company through the deceased; this evidence we have already held was properly rejected by the court below, and, therefore, the checks when offered and ruled out were without any evidence whatever to properly connect them with this case.

Judgment below affirmed.