Dime Bank and Trust Company of Pittston,
Appellant, *v.* O'Boyle et al.

Argued April 10, 1939.   Before SCHAFFER, MAXEY,
DREW, LINN and STERN, JJ.

*Kenneth J. English,* with him *William H. Gillespie, M. J. Mulhall,* and *John T. Mulhall,* for appellant.

*Frank L. Pinola,* with him *J. Justin Blewitt,* for appellees.

OPINION BY MR. JUSTICE LINN, May 8, 1939:

This appeal is from an order striking off a judgment against J. F. O'Boyle, entered by a prothonotary, on a confession of judgment appearing on the back of a negotiable note. The face of the note stated:
"No. 23733
"$18,500.00

"PITTSTON, Pa., Sept. 17, 1928.

"Ninety days after date we promise to pay to the order of Ourselves at the DIME BANK AND TRUST COMPANY, Pittston, Pa., Eighteen Thousand Five Hundred and 00/100 dollars, without defalcation for value received, and confess judgment for the above sum, with five per cent added for collection fees, in event payment shall not be made at maturity; hereby waiving stay of execution, the right of inquisition and appeal and the benefit of all laws exempting real or personal property from levy or sale; and further waiving protest and notice of dishonor.

"PITTSTON COAL SALES CO., INC. (SEAL)
"J. F. O'BOYLE, Treas. (SEAL)
"Due Dec. 17."

On the back was:

"Now ................ 19.., ................ do hereby assign the within note and guarantee the payment thereof to the DIME BANK & TRUST [sic] COMPANY, Pittston, Pa., or bearer at maturity, according to the tenor thereof; waiving [sic] protest and notice of protest or dishonor, and confessing judgment for the

amount and collection fees, in the event same is not paid at maturity, with the same rights to the holder against ................ as against the maker; waiving also all stay, inquisition and exemption laws of Pennsylvania.

"PITTSTON COAL SALES CO., INC. (SEAL)
"J. F. O'BOYLE, Treas. (SEAL)
"J. F. O'BOYLE."

The appellant is the Dime Bank & Trust Company, to whom the note was negotiated, as appears by the special endorsement. It contends that the prothonotary was authorized to enter the judgment by section 28 of the Act of February 24, 1806, 4 Sm. Laws 270, 278, which makes it his duty "on the application of any person being the original holder (or assignee of such holder) of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney-at-law, or other person to confess judgment, to enter judgment against the person or persons, who executed the same for the amount, which, from the face of the instrument, may appear to be due, without the agency of an attorney, or declaration filed. . . ." It is settled that the act must be strictly construed.[1]

The learned court below was of opinion that the instrument did not clearly show the amount for which judgment was intended to be entered, that the prothonotary's act was therefore unauthorized and that the judgment must be stricken off. We think that position cannot be maintained. The amount for which judgment was entered, and was intended to be entered, clearly appears by reference to the other side of the note and the prothonotary was justified in so considering it. Apart, now, from the question whether O'Boyle authorized any confession against him, a subject dealt with later, it is to be noted that payment was guaranteed and judgment was confessed "for the amount and col-

[1] Many of the cases are collected in *Oberlin v. Parry*, 287 Pa. 224, 228, 134 A. 460.

lection fees, in the event same is not paid at maturity"; the "amount," so referred to, appears on the face of the note to which reference was directed by the writing on the back. Such reference from one side of the paper to the other, if intended, is consistent with the construction placed on the statute: *Cooper v. Shaver,* 101 Pa. 547. When, on January 7, 1929, the bank presented the note to the prothonotary for the entry of judgment against the corporation maker at No. 915, January Term, 1929, (a judgment not challenged) and against James F. O'Boyle at No. 916, January Term, 1929, (the judgment stricken off) the note was past due as would appear by inspection. The note was in the possession of the bank; its possession was prima facie proof that the note was owing to it as holder,[2] to whom it had been specially endorsed. As it was past due, an averment that it had not been paid at maturity was unnecessary to advise the prothonotary of the fact; it already appeared; and the only amount involved was that stated on the face of the note.[3] The difference between the case, in this respect, and those relied on by the learned court below is plain. In *Meyers & Joly v. Freiling,* 81 Pa. Superior Ct. 116, the authority to confess judgment was "for any of the above sums, with cost of suit"; the words "above sums" referred to commissions to be earned; obviously a prothonotary could not determine from the paper what would be earned. In *Automobile Corporation v. Duffey-Mullen Motor Co.,* 85 Pa. Superior Ct. 296, the amount due on the note was to be reduced by payment of monthly installments so that the paper furnished no information to the prothonotary of the amount due at the time it was presented for the entry of judgment; *Lansdowne Bank &*

---

[2] Cf. *Whitney v. Hopkins,* 135 Pa. 246, 254, 19 A. 1075.

[3] Compare *Drey St. M. Co. v. Nevling,* 106 Pa. Superior Ct. 42, 161 A. 880; *P. Minnig Co. v. Carter,* 113 Pa. Superior Ct. 231, 173 A. 726.

*Trust Co. v. Robinson,* 303 Pa. 58, 154 A. 17, is another illustration. In *Kalf v. Lieberman,* 282 Pa. 479, 128 A. 122, an averment of default was held necessary because "on the face of the record no default is apparent." Here it was apparent.

We can therefore not sustain the order striking off the judgment for the reason given by the learned court below. But our conclusion on this point will not dispose of this appeal as the parties have made the record.

The note was negotiable. Being payable to "ourselves," the maker's obligation did not arise until the note was negotiated. The negotiation was by the special indorsement and delivery to the plaintiff bank. While O'Boyle may have been acceptable as guarantor the words on the back of the note do not include him in that category.[4] If the bank regarded him as having joined in the guarantee and confession appearing on the back of the note, why did it leave blank the space provided for the purpose of inserting words showing precisely who was intended to be included?[5] O'Boyle was an indorser (Sections 17(6), 63 and 64 of the N. I. L. of 1901, P. L. 194, 56 PS sections 22(6), 154 and 155) and apparently an accommodation indorser, section 29, N. I. L., 56 PS section 66. Inspection shows that the bank did not indorse the note for transfer; O'Boyle probably placed his name on it before it was delivered to the bank. There is nothing to show that his indorsement, without more, constituted an agreement for the entry of judgment against him; in the absence of evidence that he agreed, the judgment is without support.

After the motion to strike off the judgment was made in the court below, the bank filed a petition averring that "O'Boyle indorsed the note in suit with the inten-

---

[4] Cf. *Southern Lime & Stone Co. v. Baker,* 281 Pa. 587, 591-592, 127 A. 221.

[5] See section 14, Negotiable Instruments Law of 1901, P. L. 194, 56 PS section 19.

tion of being personally bound by the provisions of the warranty of attorney printed on the back of the note above his signature" and praying that an issue [6] be awarded "to have the question determined by a jury . . ." An answer was filed together with an agreement stating the issue to be tried.

On this record, therefore, we shall not, at this time, reverse on the merits of the case which, by the agreement of the parties, remain to be developed; the order is reversed pro forma and the record is remitted with direction to strike off the judgment unless the issue be promptly tried and found in favor of the plaintiff bank, costs to abide the result.

---

[6] See *Southern Lime & Stone Co. v. Baker,* 282 Pa. 204, 127 A. 764.