ROBERT G. STOEAKELS AND CARRIE A. STOEAKLES, Plaintiffs, v. THE PEOPLES NATIONAL BANK OF LAUREL, a corporation of the United States of America, Executor of Edward M. Dolby, deceased, who did survive his wife, Elizabeth E. Dolby, Mortgagors, and Maud T. Dolby and Richard C. James, Terre Tenants.

(*April* 14, 1950.)

TERRY, J., sitting.

*James M. Tunnell, Jr.* (of Tunnell and Tunnell) and *Ralph S. Baker* for the plaintiffs.

*Daniel J. Layton, Sr.,* for The Peoples National Bank of Laurel, executor of Edward M. Dolby, deceased, defendant, and *Isaac D. Short, 2nd,* for Richard C. James, defendant.

Superior Court for Sussex County, No. 260, Civil Action, 1949.

Terry, J.

This is an action of scire facias sur le mortgage. The plaintiffs, Robert G. Stoeakels and Carrie A. Stoeakels, his wife, allege in their complaint (1) that on the first day of January, 1921 Edward M. Dolby and Elizabeth E. Dolby, his wife, for valuable consideration signed, sealed and delivered unto them a good and valid real estate mortgage securing a principal debt of $2000 payable on or before the first day of January, 1923, with interest at the rate of 5% paid annually from the date thereof, covering a certain tract of land in Broad Creek Hundred, Sussex County, Delaware, the abstract of which is attached as Exhibit "A" and by reference made a part thereof; (2) that since the execution and delivery of said mortgage the mortgagors have made no payments on the principal debt but did make payments of interest as follows: 1922—$100 and 1925—$100; (3) that the mortgagors have defaulted in accordance with the terms of said mortgage and now owe to the plaintiffs the principal amount of the mortgage together with interest from January, 1921 at the rate of 5%, subject to the aforementioned credits; (4) that the plaintiffs pray that judgment on the mortgage be entered against the defendants for the sum of $2000 with interest aforesaid, subject to the aforementioned credits, together with 5% counsel fees.

Accompanying the abstract of mortgage (Exhibit "A") is an affidavit of demand. The amount set forth therein as being due and owing is the sum of $2000 with interest from January, 1921, subject to credits of interest payments in 1922 and 1925 of $100 each.

Edward Dolby, having survived his wife Elizabeth A. Dolby, died during September, 1949. The Peoples National Bank of

Laurel, a corporation of the United States, duly qualified under his will as his executor.

The executor in due course filed an affidavit of defense averring therein "(1) that there is a legal defense to the whole of said cause of action in said suit the nature and character of which is payment, of which defense is as follows, to-wit: payment."

Simultaneously, with the filing of the affidavit of defense, the executor filed its answer as follows:

"1. This defendant admits that there is of record in the Office of the Recorder of Deeds, in and for Sussex County, Delaware, in Mortgage Record No. 73, page 414, the record of a purported mortgage wherein Edward M. Dolby and Elizabeth E. Dolby are Mortgagors, and the plaintiffs herein are mortgagees, the said purported mortgage bearing date January 1, A.D. 1921, to secure the payment of the sum of Two thousand ($2,000.00) Dollars, payable on or before January 1, 1923, with interest at 5% per annum, as stated in the Complaint and accompanying abstract of said purported mortgage, but the defendant has no knowledge or information sufficient to form a belief with respect to the execution and delivery of said mortgage, or the amount due thereon, and demands strict proof thereof.

"2. This defendant has no knowledge or information sufficient to form a belief as to the truth of the averments respecting the payments of interest upon said mortgage debt as alleged in the complaint and demands strict proof thereof.

"3. This defendant has no knowledge or information sufficient to form a belief whether the defendant, Edward M. Dolby, in his lifetime, made default in accordance with the terms of said mortgage, as alleged by the plaintiffs, nor whether the said Edward M. Dolby, at the time of his death, or this defendant, as executor as aforesaid, owed, or owes, the plaintiff the principal amount of the mortgage, to-wit, Two thousand ($2,000.00) Dol-

lars, with interest from January 1, 1921, at the rate of 5%, subject to the stated credits, and demands strict proof of all averments contained in paragraph 3 of the Complaint."

"Affirmative Defenses

"1. For an affirmative defense, the defendant says that the said Edward M. Dolby died on or about July 6, 1949; that according to the terms of said purported mortgage, the debt evidenced thereby became due and payable on January 1, 1923; that this suit was brought on September 19, 1949, a lapse of over twenty-six years; that no action to foreclose said mortgage was instituted by the plaintiffs prior to September 19, 1949; that no interest has been paid upon said mortgage debt since the year 1925 when the sum of One hundred ($100.00) Dollars was paid, as alleged in the Complaint; and that said mortgage is presumed to have been paid.

"2. The defendant denies that there is due and payable on said mortgage debt and interest, if any part is in fact owing, 5% as counsel fees for the reason that the said mortgage contains no provision for the payment of counsel fees at any stated rate of percentage.

"Wherefore, the defendant prays that judgment be entered for it, as executor of said deceased, and that the action of the plaintiffs be dismissed."

The defendant, Richard C. James, likewise filed an answer in the exact words and language as that employed by the executor.

A formal hearing was conducted by me without the aid of a jury. The plaintiffs to sustain their position duly proved by direct and documentary evidence, independent of any testimony on their part, the execution and delivery of the mortgage by the mortgagors. The mortgage was then admitted in evidence. The plaintiffs next endeavored to rebut the presumption of payment under the affirmative defense (1), as set out in the answers. Their proof

in this respect is in part and in substance as follows: Golda Dolby testified that in 1948 he took his brother, the deceased mortgagor, to Phoenix, Arizona for the benefit of his brother's health; that while in Phoenix they discussed on two occasions the mortgage in question.

"Q. All right, tell the Judge and counsel about both occasions at Phoenix, Arizona, what he said? (Mortgagor) A. Well, we were talking about it cost so much to travel. So my brother said, he says, 'You boys have spent a right good bit of money on me.' And he says, 'I hope to be able to put chickens in again this fall.' 'If I do,' he says, 'maybe I will be able to pay you boys back, and pay Bob and Carrie too.' He says, 'They hold the mortgage against my property.' And he said, 'That's the only thing that's against it.'

"Q. All right. That is one occasion. Did he later speak to you about it in Arizona? A. Yes, he did. It was the day for him to go to the doctor, and he said he was not feeling so well. So after the doctor examined him, he told him that he had a heart condition. So, then, when we got back to the hotel I noticed he was sort of despondent. Finally he said, he says, 'Golda, if anything happens to me, I want you boys to have what you spent on me.' He says, 'I think there will be enough. I want Bob and Carrie to have— to be paid for the mortgage they hold against me, or against my property.' And he says, 'If there is anything left,' he said, 'I would like for Richard to have one of the lots.'"

John Fisher, a right-of-way man for the State Highway Department, during the years 1938 and 1940, inclusive, testified that he approached Edward M. Dolby, the mortgagor, in regard to the purchase by the State of a few feet of his land so that the public road running by the same could be widened; that Dolby at that time told him that he could not sell the land required, as the Stoeakels held a mortgage on it which he still owed and that it was a lien upon that particular land; that during 1940 Fisher hand-

ed to Dolby, the mortgagor, a deed for the land which the State desired to purchase and that Dolby signed the deed and directed Fisher to go to the home of the Stoeakels (mortgagees) in order to have them sign a release of their mortgage to the land so purchased.

Two additional witnesses appeared. Mrs. Golda Dolby and Oscar James were called by the plaintiffs. Each testified that Edward M. Dolby had specifically acknowledged the existence of the mortgage debt to them. Mrs. Dolby testified that on numerous occasions, in making settlements for chickens, the mortgagor acknowledged the mortgage debt and stated that he intended to pay it when able; that on one occasion in 1945, when the mortgagor purchased an automobile, and on another occasion in 1947, when he made a profit of $700 on chickens, he stated that he probably should apply the money to the payment of the Stoeakels mortgage.

Oscar James stated that he tilled some of the mortgagor's land; that about 1941, shortly after the mortgagor had purchased a new car, he acknowledged the mortgage debt and stated that he probably should have applied the money used in purchasing the automobile to the Stoeakels mortgage.

The plaintiffs rested their case upon the conclusion of the foregoing proof. Counsel for the defendants then moved for judgment on two grounds: (1) that the presumption of payment had not been sufficiently rebutted, and (2) that even though the plaintiffs' evidence be sufficient to rebut the presumption of payment they have not met their burden of proof in establishing the amount due and owing upon the mortgage as to principal and interest, or both.

I indicated to counsel for the plaintiffs that if proof of the amount due, in addition to that already produced, was available that I thought it should be offered.

Robert G. Stoeakels, one of the mortgagees and plaintiffs, was

produced. Upon being sworn he was asked by counsel to state the amount of his claim in this suit against the defendants. Defense council objected on the ground that the plaintiff's answer would of necessity relate to a transaction with the deceased mortgagor and thus be in direct violation of Section 4687 of the Revised Code of 1935 (Disqualification Statute).

I overruled the objection and permitted the witness to answer the question, which he did. I stated at the time that if the question and answer be found by me upon reflection to be improper that the same would not be considered in any respect in reaching my ultimate decision in the case. The offer of the foregoing testimony concluded the plaintiff's case.

The defendants rested their cases without the production of any evidence whatsoever.

Three interesting questions are presented for determination:

1. In a foreclosure proceeding against the estate of a deceased mortgagor, may the mortgagee testify as to the amount of his claim in the foreclosure proceeding?

2. Do unqualified acknowledgements made by the mortgagor to disinterested third parties within the last twenty years effectively rebut the presumption of payment that the law raises after a mortgage has been due and unpaid for more than twenty years?

3. Once the presumption of payment has been sufficiently rebutted then must the mortgagee in a foreclosure proceeding produce affirmative evidence in addition to the mortgage itself to establish the full amount of the mortgage or any unpaid balance thereof?

An answer to the first question, which relates to the admissibility of the testimony of Robert G. Stoeakels, one of the plaintiffs, concerning the amount of the plaintiffs' claim, necessitates a determination of the import to be given to the word "trans-

action" as the same appears in Section 4687 of the Revised Code of 1935.

"4687. Sec. 2. Interest of Witness no Disqualification: Party to Action by or Against Executors, Administrators or Guardians: Disqualified to What Extent: — No person shall be incompetent to testify in any civil action or proceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined: *Provided, that in actions or proceedings by or against executors, administrators or guardians in which judgment or decree may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party.*"

The policy enunciated under the provisions of the foregoing sections is predicated upon the thought that since death has sealed the lips of one of the parties then justice demands that the law should seal the lips of the other. This survival of a part of the now discarded interest - qualification is deplorable in most respects for it is bottomed upon a fallacious and exploited principle leading to as much or more false decision than it prevents. It encumbers the legal profession with a profuse mass of barren quibbling on the interpretation of mere words.

■ I think the word "transaction" as employed connotes an occurrence or action of which both the deceased and the other party had knowledge and to which the deceased, if living, would equally qualify to testify with the other party. *Wigmore on Evidence, Section* 578; *Kraus v. Emmons,* 6 Boyce (*Del.*) 104, 97 *A.* 238; *Miller v. Frick's Adm'r,* 7 Boyce (*Del.*) 374, 107 *A.* 394; *Schagrin v. Schagrin,* 5 Boyce (*Del.*) 318, 92 *A.* 862; *Chandler v. Woodward,* 7 Penn. (*Del.*) 54, 76 *A.* 623; *Clark v. Sipple,* 10 *Del. Ch.* 51, 84 *A.* 1.

■ Testimony by either of the plaintiffs as to the payment or nonpayment of such mortgage or any portion thereof would clearly be inadmissible as reflecting a transaction between the parties within the meaning of the statute. *Knowles* v. *Waller, 7 Penn.* (*Del.*) 220, 78 *A.* 611. Robert G. Stoeakel's testimony in the present case that the plaintiff's claim amounted to a certain sum while not stated in the precise wording of payment or non-payment, nevertheless, indicates emphatically the necessity of a mathematical computation involving possible credits in the way of partial payments, the conclusion of which would indirectly reflect payment or nonpayment or partial payment of said mortgage debt and constitute a transaction within the meaning of the statute.

I conclude that the testimony of Robert G. Stoeakels relating to the amount of the plaintiffs' claim should not have been admitted over the defendants' objection and such will not be considered by me in my determination of this case.

■ The second question concerns the character of the plaintiffs' evidence as the same relates to a rebuttal of the presumption of payment as indicated under the affirmative defense in both answers. The defendants concede the execution and delivery of the mortgage. In fact, the same was admitted in evidence without objection on the part of either.

Our Courts have made several declarations relative to the rule of presumption of payment. The Court stated in the case of *Robinson's Adm'r* v. *Milby's Adm'r, 2 Houst* (*Del.*) 387—"For it is at best, only presumptive and never positive proof of the payment of it."

In the case of *Farmers' Bank* v. *Leonard, 4 Harr.* (*Del.*) 536, it was said:

"It is a well established rule of law, that where a debt due

by specialty has not been demanded by the plaintiff, or acknowledged or recognized by the defendant, for twenty years, and nothing is shown to account for the delay, the debt shall be presumed to have been fully paid and satisfied.

"This rule applies not only to bonds, but to mortgages, judgments, recognizances, decrees, and other debts of record. If the presumption is not repelled by sufficient legal evidence, it becomes absolute and conclusive; and the jury are bound to render a verdict for the defendant, although they may individually believe, that the debt has not been paid.

"The rule is founded on the common experience of the conduct of men in relation to the transaction of business; and was intended for the security and repose of society, by discountenancing suits for stale demands, and discouraging the laches and negligence of parties in delaying to prosecute their claims, for an unreasonable length of time, when they had the means and opportunity of enforcing them.

"The rule also was intended for the protection of the debtor, whose receipts or vouchers may perhaps be lost; or witnesses be dead or removed; or the true state of the transactions be otherwise obscured by lapse of time. It is better for the peace and repose of society, and the ends of justice, that the presumption arising from lapse of time should be adhered to, and not be easily rebutted; although in many cases, it may be contrary to the actual truth of the case."

■■ In 48 C. J., Payment, Page 709, 711 it is said that the presumption gathers strength with each successive year after twenty years.

Likewise, in another jurisdiction the Court Stated in the case of *Gregory* v. *Commondwealth,* 121 *Pa.* 611, 15 *A.* 452, 6 *Am. St. Rep.* 804:

"The presumption of payment from lapse of time, like other presumptions of payment, is merely a presumption of fact, and, although it is conclusive in the absence of any evidence tending to show payment, it is rebuttable, its effect being merely to make a prima facie case in favor of the debtor as to payment and to place upon the creditor the burden of introducing evidence showing, or tending to show, the fact of nonpayment. Nevertheless, the presumption of payment after a lapse of twenty years is a strong one, and the evidence to rebut it must be satisfactory and convincing."

Wigmore on Evidence, Section 2491 states:

"Nevertheless, it must be kept in mind that the particular effect of a presumption of law (that is a real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the Judge's requirements of some evidence) the presumption disappears as a rule of law and the case is in the jury's hands free from any rule."

The sufficiency and force of the evidence required to rebut the presumption of payment from lapse of time has been the subject of pronouncement by our Courts upon several occasions. In the case of *Farmers' Bank* v. *Leonard, supra,* it was said:

"The evidence for this purpose must consist: first, of an unconditional and unqualified acknowledgement or admission, either expressed or implied, on the part of the defendant within twenty years of the justness of the claim and that it is still due; or second, a payment on account of either the principal or interest either of which is an implied recognition of the debt; or, third, the situation, condition, or circumstances of the parties, such as

the absence of the plaintiff or the defendant in a foreign country; or the insolvency or embarrassed condition of the plaintiff or the defendant."

Likewise, in the case of *Robinson's Adm'r v. Milby's Adm'r, supra*—

" * * * that recognition or acknowledgement of it within twenty years as a subsisting debt."

*Cloud's Adm'r v. Temple's Adm'r,* 5 *Houst.* (*Del.*) 594,

" * * * an admission of the existence of the debt and that it is due and unpaid."

*Burton's Adm'r v. Cannon,* 5 *Harr.* (*Del.*) 13,

"The acknowledgement or admission of the defendant is sufficient, whether made to the plaintiff or to a third person, but in either case, it ought to be an acknowledgement of the debt that is sued for, or expressly refer to it."

*Hudson v. Williams,* 6 *Penn.* (*Del.*) 550, 72 *A.* 985, 987,

"If from that evidence you are satisfied that there has been a distinct acknowledgement of indebtedness upon the note on the part of the defendant within 20 years before the bringing of this suit, your verdict should be for the plaintiff; but, if, on the other hand, you are not so satisfied, your verdict should be for the defendant."

The several unqualified admissions by the mortgagor to third persons within the last twenty years indicating the existence of the mortgage debt and that it was due and unpaid must be said to be of sufficient quality and character to rebut the presumption of payment. Necessity does not require that such admissions include an express statement of the claim then due and owing. The requirement of sufficiency was met in the case sub

judice when the mortgagor unqualifiedly acknowledged the existence of the mortgage debt as indicated and admitted that at that time it was still due and unpaid.

[10] Now we pass to the third question: "Once the presumption of payment has been rebutted then must the mortgagee in a foreclosure suit produce affirmative evidence to show the exact amount of the unpaid balance?"

A proper determination of this question is of real import. An affirmative answer in the present case would bring into direct operation the application of the word "transaction" as employed in Section 4687 of the Code of 1935, *supra,* and it would seem that the plaintiffs here could not prevail unless they were able to show a definite admission as to the exactness of their claim by the testimony of witnesses independent of themselves.

The presumption of payment having been successfully rebutted, thus eliminating that affirmative defense, we now turn to the allegations of the complaint and the denials thereto as appear in the respective answers, in such wise meeting squarely the question presented.

It is contended that our Rules of Court apply generally to suits to foreclose mortgages and are not limited in application by the provisions of Rule 81; that by Rule 3 (a) an action is commenced by filing a complaint; that by Rule 3 (b) the plaintiff in an action of scire facias sur le mortgage may file with the complaint an affidavit of demand; that Rule 8 (a) provides that a complaint shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled.

The defendants therefore say that a complaint which fails to include a demand for judgment for specific relief under Rule 8 (a)

(2) would be subject to objection as not stating a cause of action, and that it would necessarily follow that a demand for judgment is a material allegation of the complaint, and, therefore, the plaintiffs must meet their burden of proof by establishing the amount now due and owing under said mortgage.

Here the defendants concede the sufficiency of the complaint but contend that the burden of proof has not been met, since proof of the mortgage without any testimony as to the amount now due thereon is wholly inadequate and cannot form the basis for a judgment in the plaintiffs' favor.

I agree with the defendants' contentions to the extent that a complaint under the provisions of Rule 8 (a) (2) must include a demand for judgment for specific relief in order to state a cause of action. I met with difficulty, however, in concluding that the plaintiffs' allegation in this respect has not been met by adequate proof. The effect of the defendants' contentions is to say that the plaintiffs should negative any question of payment. This duty I find to be reposed upon the defendants by way of an affirmative defense under Rule 8 (c) of this Court.

Here the plaintiffs have proved the execution and delivery of the mortgage, together with the bond accompanying the same and the consideration thereof. They have the present possession of the mortgage and bond which must be said to establish prima facie their right to recover upon the mortgage according to its terms. They are not required to prove that the mortgage has not been paid. Their case is made by the production of the instrument in the first instance, and, as indicated, the burden of showing any affirmative defense such as payment, discharge or otherwise rests upon the defendants. *Koenig* v. *Curran's Restaurant & Baking Co.,* 317 *Pa.* 431, 177 *A.* 35; *Wilson* v. *Stevens,* 105 *N. J. Eq.* 377, 148 *A.* 392; *Whitney* v. *Hopkins,* 135 *Pa.* 246, 19 *A.* 1075; *Cloud's Adm'r* v. *Temple's Adm'r, supra.*

The mortgage now in evidence furnishes sufficient proof for a determination of the amount due and owing as alleged under the plaintiffs' demand for judgment. The plaintiffs are entitled to judgment in the amount of $2000 covering the principal debt under the mortgage, together with interest thereon at 5% from January 1, 1921, less payments on account of interest in the amount of $200 as admitted by the plaintiffs in their statement of claim.

 Since the mortgage does not contain a provision for the payment of counsel fees, the plaintiffs' demand in this respect is denied.